**EXHIBIT 5**

**TO**

**DEFENDANTS' BRIEF IN SUPPORT OF MOTION FOR SUMMARY DISPOSITION**

# CONTRACT SERVICES AGREEMENT

This Agreement is effective as of January 1, 2011 between Merchandising Productions, Inc., having its principal place of business at 7575 Fulton Street East, Ada, Michigan 49355 ("MPI"), and:

> Holly Brooks
> 2374 Patterson
> Shelbyville, Michigan 49344
> ("Contractor")

WHEREAS, MPI wishes to retain, from time to time as needed and at its sole option, Contractor for the purpose of performing certain designated instructional services in connection with MPI's workshops;

WHEREAS, Contractor represents that she has sufficient training, expertise and available time to perform such services, and is willing to personally provide such services as an independent contractor, and said services will be personally performed by Contractor; and

WHEREAS, MPI and Contractor agree that MPI will request Contractor's services through the issuance of individual program orders or other documentation by MPI for services and periods of time to be specified by MPI in accordance with this Agreement.

NOW, THEREFORE, MPI and Contractor agree that any such program orders and Contractor's performance thereunder will be in accordance with the terms and conditions set forth in this Agreement and those of such documentation as may be issued to Contractor in accordance with this Agreement. In the event the terms of any program order conflicts with the terms of this Agreement, this Agreement shall control.

## TERMS AND CONDITIONS

I. **RESPONSIBILITIES AND SPECIFIC DUTIES.**

    A.   <u>Instruction</u>:

        1.   Contractor agrees to conduct workshops for MPI and/or its affiliates, including but not limited to Amway Corp. ("Amway") formerly Quixtar Inc., and Alticor Inc., formerly Amway Corporation ("Alticor"), and their independent business owners ("IBOs"), positively promoting and instructing IBOs regarding a specific area(s) of the Amway/Alticor product line; teach and explain both basic and in depth information regarding the Amway products; explain and/or demonstrate usage of such products; conduct role playing scenarios to illustrate specific sales techniques (limited to the marketing of the product line(s) to which Contractor is assigned); lead discussions of the customer needs and successful merchandising techniques; and organize question and answer sessions as required by MPI.

2. Contractor will conduct the workshops by presenting to IBOs a minimum of eighty (80%) percent of the script provided by MPI, including without limitation, all relevant content, facts, scientific information, graphs, demonstrations, trends, role playing and the thread and theme (the "MPI Materials") as identified by MPI. MPI and Contractor acknowledge and agree that the MPI Materials provided to Contractor hereunder have been approved by the management personnel of various business areas of MPI and/or its affiliates, including without limitation, Research and Development, Marketing, Sales and Legal.

3. Any performance of services by Contractor hereunder may be recorded by MPI, or any IBO with MPI's prior permission, in any format now known or developed in the future, without prior notice or consent of Contractor or without additional compensation payable to Contractor, other than the compensation set forth in Section XIII. of this Agreement. Pursuant to Section X.A. of this Agreement, any such recording shall be owned by MPI, regardless of the party which physically made or created the recording.

4. As designated by MPI, Contractor agrees to assist with training of Amway/Alticor personnel regarding product lines and merchandising techniques.

B. Program Development and Maintenance:

1. Contractor agrees to assist in the development of future generations of the workshop, including the development of training materials and sales aids as required by MPI.

2. Contractor agrees to assist in perfecting and adapting workshop presentations and content to meet the individual and collective needs of IBOs participating in the workshop.

C. Feedback and Analysis:

1. Contractor agrees to prepare an event assessment, in the format approved by MPI, for MPI product managers, sales personnel, or others as required, containing Contractor's perceptions of IBO needs, new ideas, concepts and problems related to each program presented by Contractor.

2. Contractor agrees to answer IBO questions and provide information by responding to IBO telephone calls, mail and electronic mail, if received by Contractor.

3. During the term of this Agreement, in the event that any IBO requests that Contractor provide instruction or information regarding any topics or product lines not covered by this Agreement, Contractor must obtain MPI's written consent prior to providing such instruction or information to IBOs.

D. **Miscellaneous:**

1. Contractor agrees to meet with product marketers or other personnel as required by MPI and to remain knowledgeable on new, existing or discontinued items in assigned product line or field.

2. Contractor agrees to work with the Market Research Department of Amway and/or Alticor in order to assist in the development or implementation of various quantitative and qualitative market research studies relating to assigned workshop programs.

3. In the event that Contractor is also an IBO, MPI will not engage or pay compensation under this Agreement for Contractor's training services requested by and/or scheduled for: (a) Contractor's upline or downline IBOs; or (b) Contractor's family members.

4. Contractor agrees to perform various other related duties as required by MPI.

II. **OPERATIONS.**

While performing services hereunder, Contractor shall perform such services in a professional and proper manner and shall take all reasonable safety precautions to protect from harm MPI's premises, employees, equipment, vehicles, property and any third party's property or personnel, and shall comply with the terms of MPI's Contractor Expectations form, attached hereto as Exhibit B.

III. **INDEPENDENT CONTRACTOR RELATIONSHIP.**

The services hereunder shall be performed exclusively and personally by Contractor. Contractor shall perform the services requested by MPI and accepted by Contractor in a timely and competent manner. Further, it is specifically agreed that the relationship created by this Contract is that of an independent contractor. Contractor is not an employee of MPI and is not entitled to any of the benefits provided by MPI or any of its parent, subsidiary or affiliated companies to their employees, including but not limited to, compensation, unemployment insurance, health and disability benefits.

IV. **TRAVEL AND EXPENSES.**

Contractor shall perform the services in Contractor's home in Shelbyville, Michigan or at various workshop locations throughout the United States, whichever location best facilitates the workshop presentations. Contractor will not be paid for mileage associated with travel within a 60 mile radius of Shelbyville, Michigan, but will be reimbursed by MPI for the costs of travel and lodging accommodations outside a 60 mile radius of Shelbyville, Michigan. Other than for air travel or lodging accommodations, which shall be reimbursed through invoices, MPI will submit to Contractor a per diem payment as reimbursement for Contractor's reasonable business expenses incurred in the performance of services under this Agreement as follows:

A. <u>Per Diem Payment</u>: Contractor will receive One Hundred Twenty and 00/100 U.S. Dollars (US$120.00) per day to cover any and all expenses, including but not limited to, meals, transportation charges, parking fees, baggage tips, storage fees, telephone calls, FAX charges, and any other miscellaneous expenses.

B. <u>Emergency Expense Reimbursement</u>: In the event that Contractor incurs any expense in an extraordinary or emergency situation that is not covered under Section IV.A, MPI will consider reimbursement to the Contractor for any such expense, provided that Contractor provides an itemized receipt to MPI and MPI determines, in its sole discretion, that the expense was necessary. All invoices for expenses incurred and reimbursable in accordance with this Section IV must be received by MPI within sixty (60) days of the date such expense is incurred. Failure to submit such reimbursable expenses within such period shall constitute a waiver on the part of Contractor of the right to receive reimbursement for such expenses.

V. <u>INDEMNIFICATION OF MPI</u>.

Contractor agrees to indemnify and hold harmless MPI and/or its affiliates, including, Amway Corp. and, Alticor Inc., and each of their directors, officers, employees, consultants and agents (collectively, "Representatives"), from all claims, liability, damages, loss and expense, for bodily injury or for damage or injury to persons or property, including without limitation, any laptop or multimedia projector, caused by or resulting in any manner from Contractor's actions or failures to act, except where such claims, liability, damages, loss or expense shall arise out of the gross negligence of MPI, Amway, Alticor and/or each of their Representatives.

VI. <u>INSURANCE</u>.

During the term of this Agreement, Contractor shall secure and maintain Commercial General Liability Insurance in the amount stipulated below:

$1,000,000 Each Occurrence
$1,000,000 Personal and Advertising Injury Limit
$1,000,000 Products-Completed Operations Aggregate Limit
$1,000,000 General Aggregate

Such insurance coverage will be issued on the Insurance Services Office (I.S.O.) current occurrence form with no exclusions other than those incorporated in the standard form or as required by the state in which such insurance is issued. Merchandising Productions, Inc. will be named as an "Additional Insured" and must be provided with a thirty (30) day written notice of cancellation or alteration.

In addition, Contractor shall secure and maintain Automobile Liability Insurance with minimum combined single limits of $300,000. MPI will be provided with a Certificate of Insurance evidencing the above insurance coverages upon execution of this Agreement.

4

VII. ASSIGNMENT.

Contractor may not assign this Agreement without the written permission of MPI. This Agreement is to be construed as a personal services contract for the services of Holly Brooks.

VIII. TERMINATION.

   A. Failure or Neglect by Contractor: In the event that Contractor at any time refuses, neglects, or fails in any respect to perform the services or any separable portion thereof in accordance with any assignment by MPI hereunder with promptness and diligence or fails in the performance of any of its obligations hereunder, or becomes insolvent, MPI may, after seven (7) days' written notice to Contractor, terminate Contractor's right to proceed with the services, such part of the services as to which such defaults have occurred, or the entire Agreement.

   B. Unavailability: In the event that Contractor refuses to accept and complete more than two (2) assignments hereunder in any given month, MPI may immediately terminate this Agreement.

   C. By Either Party: Either party may terminate this Agreement at any time and for any reason during the term of this Agreement by providing to the other party thirty (30) days' written notice of such termination.

   D. Termination: Unless earlier terminated in accordance with Sections VIII.A., B., or C. above, this Agreement shall terminate on December 31, 2011.

IX. CONFIDENTIALITY.

The parties acknowledge and agree that they have executed an Agreement Regarding Confidentiality and Intellectual Property, which is attached hereto as Exhibit A and incorporated herein, which Agreement shall govern confidential disclosures between the parties. Within ten (10) days of the date of termination of this Agreement, Contractor shall return all documents, effects and MPI Materials which have been entrusted to Contractor by MPI and/or its affiliates.

X. INTELLECTUAL PROPERTY RIGHTS.

   A. Ownership: Contractor agrees that any work performed under this Agreement shall be considered a "work-made-for-hire" as that term is defined in the copyright laws of the United States of America and that MPI is entitled to claim authorship of such material and ownership of any copyright. MPI shall be considered the owner of any original works of authorship conceived or executed by Contractor, individually or jointly, whether or not through the use of or contact with MPI Materials, facilities or personnel, if at the direction of MPI or any of its affiliates or pertaining in any way to performance of services under this Agreement. Further, Contractor shall promptly disclose to MPI and not to any other party without the written consent of MPI, any discovery, invention, improvement, product, process, apparatus or design (whether

or not patentable) which Contractor, individually or jointly, during the term of this Agreement may invent, discover, conceive or originate, whether or not through the use of or contact with MPI Materials, facilities or personnel, based on or related to the confidential information provided under this Agreement, the subject matter of this Agreement or the products with which Contractor becomes familiar as a result of this Agreement. To the extent not assigned by operation of law, Contractor agrees to assign to MPI all rights, title and interest in any works of authorship or intellectual property rights and to any such discovery or design produced under this Agreement, including all copyrights and all patent rights, and to execute any assignments or other documents presented to it by MPI which are necessary to vest such intellectual property rights in MPI without any other or additional compensation.

B. <u>Name and Likeness Use</u>:

1. Contractor grants to MPI and its affiliates the right to use her name, nickname, photograph, image, likeness, voice, signature facsimile, biographical information and other identifying attributes ("Contractor Identification") on a worldwide, royalty-free basis, commercially and publicly, in any reasonable manner in all forms of tangible expression, now known or developed in the future, including without limitation, audio, video, CD-ROM, television and radio commercials, print ads, out-of-home media, internal or external trade media, consumer media, internet and interactive, and any advertising in connection with the services performed by Contractor hereunder. Contractor waives any claim against MPI and its affiliates that use of Contractor Identification in accordance with this Agreement constitutes an invasion of Contractor's privacy. Use of Contractor Identification by MPI and its affiliates is permitted in perpetuity for materials containing the Contractor Identification that are made during the term of this Agreement.

2. Contractor grants to IBOs the limited right to, upon receiving prior approval from MPI, record, in any format now known or developed in the future, Contractor's performance of services hereunder and to reproduce, display, promote, advertise, distribute, sell, transfer and otherwise exploit such recordings, including use of the Contractor Identification, solely for such IBOs and to downline and prospective IBOs. No other use of Contractor Identification by IBOs is contemplated or authorized hereunder. In order to exercise the grant of rights under this Section, IBOs must receive prior approval of MPI to make the recording and then submit the recording to MPI for approval prior to reproducing, displaying, promoting, advertising, distributing, selling, transferring or otherwise exploiting such recording. Contractor waives any claim against IBOs that approved use of Contractor Identification in accordance with this Section of the Agreement constitutes an invasion of Contractor's privacy. Use of the recordings and Contractor Identification by IBOs in accordance with this Section X.B.2 is permitted in perpetuity for recordings that are made during the term of this Agreement.

6

XI. MODIFICATIONS.

Any change in the provisions of this Agreement or program orders issued pursuant to this Agreement shall be made in writing and signed by both parties hereto in order to be effective.

XII. GOVERNING LAW AND JURISDICTION.

This Agreement shall be governed by and construed in accordance with the laws of the State of Michigan, without regard to the conflicts of law principles of Michigan or any other state or country. Each party (a) agrees that any litigation arising out of this Agreement may be brought only in the state or federal courts whose jurisdiction includes Kent County, Michigan, (b) consents to the jurisdiction of such courts, and (c) waives any argument that any such court is an inconvenient forum.

XIII. PAYMENT.

 A. 1. <u>Up-Front Payment</u>: Upon full execution of this Agreement by both parties, Contractor will receive an up-front payment of Seven Hundred and 00/100 U.S. Dollars (US$700.00).

   2. <u>Daily and Hourly Service Rates</u>: Following Contractor's successful completion of services pursuant to this Agreement, Contractor will receive Nine Hundred Fifty and 00/100 U.S. Dollars (US$950.00) for each day on which services are provided. A "day" of service shall be defined as more than four (4) hours of service in one (1) twenty-four (24) hour time period. Days in which Contractor provides services for four (4) or less hours will be billable at an hourly rate of One Hundred Eighteen and 75/100 U.S. Dollars (US$118.75). This daily or hourly rate will also be payable to Contractor for those days on which Contractor travels to and from a workshop site outside of the Shelbyville, Michigan area, provided that travel to or from the site could not have been accomplished on the day of the workshop. The hourly or daily rate shall be in addition to any daily per diem payment to which Contractor is entitled under Section IV.A of this Agreement.

 B. <u>Product Familiarization Allowance</u>:

   1. In order for Contractor to become knowledgeable regarding Amway products, upon full execution of this Agreement by both parties, Contractor will receive credits in the following amounts from MPI (collectively, the "Products Familiarization Allowance"): i) One Thousand Five Hundred and 00/100 U.S. Dollars (US$1,500.00) to be used exclusively toward purchase of Amway Personal Accents Jewelry and Amway coreline products, including but not limited to: Artistry, clear.now, Tolsom, iCook, Atmosphere, Nutrilite, and/or Legacy of Clean. Contractor may not use the Product Familiarization Allowance to purchase Kozy Kids, Smart Menu, Meadowbrook, or other Amway catalog products, including but not limited to Ribbon albums and fragrances. Upon exhaustion of the Product Familiarization Allowance, Contractor understands and agrees that any additional

Amway products will be considered for Contractor's personal use and, accordingly, must be purchased through Amway IBOs.

2. Contractor will be taxed on the dollar amount of products received during the life of this contract. Contractor will be required to provide an accounting of the product expenses as of the date that they reach the maximum Product Familiarization Allowance amount as set forth in this Agreement or December 31, 2011, whichever comes first. In the event Contractor fails to provide such accounting, Contractor will be taxed at the maximum of $1,500.00 for both coreline products and Personal Accents jewelry. Any amount not accounted for will be treated as taxable income.

C. <u>Invoices</u>:

Contractor shall submit its invoices to Amway Accounts Payable at:

1. Email to: AP.Invoices@amway.com

- Upon the execution of this Schedule, a Purchase Order (PO) will be created and efaxed to Contractor.

- The PO number and line number <u>must be included</u> on each invoice to avoid delays in processing.

The PO number will be set up with multiple lines, with differing account numbers, depending on the service requirement. It is imperative that the PO number and line number appear on the invoice as instructed when the service request is made. The PO number and line number will be provided at the time the service is requested.

2. Each invoice shall: (a) include the description of services and hours expended by each Contractor employee, agent or subcontractor performing services; and (b) if applicable, separately itemize expenses for which reimbursement is sought by date, type of expense and name of individual who incurred the expense. Upon receipt of Contractor's invoice requesting payment of fees or reimbursement of expenses, MPI shall have fifteen (15) days to review and dispute in good faith any such fees or expenses. In the event that MPI does not dispute a fee or expense within such fifteen-day period, the amount is deemed approved. For undisputed amounts on any invoice, MPI shall pay or reimburse Contractor within thirty (30) days of its receipt of Contractor's invoice for such amounts. Contractor waives any right to payment of fees or reimbursement of expenses that are not set forth on a Contractor invoice, supported by appropriate documentation, and received by MPI within thirty (30) days of being incurred by Contractor. The terms of this paragraph shall control all matters related to Contractor invoices and any conflicting or additional terms in a Contractor invoice shall not be binding on MPI.

XIV. <u>RESTRICTIONS</u>.

A. Contractor agrees not to solicit any IBOs to sell or otherwise distribute any product or service other than an Amway/Alticor product or service while performing services

8

pursuant to this Agreement. Contractor shall have no authority to contract, bind or obligate MPI or any of its affiliates in any manner or amount. Contractor will not accept any fee from any source other than MPI for any service provided pursuant to this Agreement, unless MPI has given its prior written consent.

B. During the term of this Agreement, Contractor will not enter into any agreements or business arrangements to provide similar services to any companies whose business competes with Amway without obtaining MPI's prior written consent.

XV. ENTIRE AGREEMENT.

This Agreement, together with Exhibit A hereto, constitutes the entire agreement between the parties with regard to the subject matter herein. This Agreement voids and supersedes all previous contracts or agreements of any kind between Contractor and MPI, other than any Agreement Regarding Confidentiality and Intellectual Property attached as Exhibit A hereto. No failure or delay by a party in exercising any right, power or privilege hereunder will be deemed or operate as a waiver thereof, nor will any single or partial exercise thereof preclude any other further exercise of any right, power or privilege hereunder. If any provision or provisions of this Agreement shall be held, for any reason, to be illegal, invalid or nonenforceable, the remaining provisions shall nonetheless be legal, valid and enforceable provisions. This Agreement does not waive, reduce or supplant the protections contained in the Michigan Uniform Trade Secrets Act. In the event of any dispute or if it becomes necessary to enforce the provisions of this Agreement, the successful party shall be entitled to recover reasonable expenses, including attorneys and other professional fees, in addition to any other available remedies. This Agreement may be executed in one or more counterparts, each of which will be deemed to be an original copy of this Agreement and all of which, when taken together, will be deemed to constitute one and the same Agreement.

XVI. SURVIVAL OF PROVISIONS.

The termination of this Agreement shall not affect any of the provisions of this Agreement which by their nature are intended to survive and continue in effect after such termination, including without limitation, Sections V., VI., IX., X., XII., XIII.C.2 and XV.

XVII. CANCELLATION RATE.

In the event that MPI does not provide Contractor with at least two (2) weeks' notice of cancellation of any event during which Contractor was scheduled to perform services hereunder, Contractor will be paid the daily rate set forth in Section XIII.

In the event a program is cancelled due to weather conditions and rescheduled Contractor will not be paid for the program cancelled. Contractor will be paid only for time invested.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first written above.

**MERCHANDISING PRODUCTIONS, INC.**           **CONTRACTOR:**

By: Chris M. Hiaeshutter                                          Holly Brooks
Its: Manager - Training Admin.

# EXHIBIT A

## AGREEMENT REGARDING
## CONFIDENTIALITY AND INTELLECTUAL PROPERTY

THIS AGREEMENT is made as of the last date below, between MERCHANDISING PRODUCTIONS, INC. and its affiliates, having a principal place of business at 7575 Fulton Street East, Ada, Michigan 49355 (collectively "MPI"), and HOLLY BROOKS, with an office located at 2374 Patterson, Shelbyville, Michigan 49344 ("Contractor").

### RECITALS

Contractor performs various services for, or vends products to, MPI and in the course of the provision of such services or vending has been, or may be, given access to information (including information conceived, originated or developed by Contractor for MPI, and information developed by third parties and licensed for use by MPI), regarding the business, trade practices, planning, policies, products and technology of MPI, from which Contractor may gain knowledge of MPI's research, development, manufacturing, purchasing, financing, accounting, engineering, marketing, and selling, which MPI considers to be confidential information and trade secrets, as well as information of MPI's independent business owners ("IBOs"), including, but not limited to IBO names, addresses, telephone numbers, and ADA/IBO numbers, as well as health information that is subject to confidentiality obligations imposed by state or federal law (collectively "Confidential Information");

Such Confidential Information has been developed through substantial expenditures by MPI of time, effort and money or acquired in the course of MPI's operations and MPI may be required to keep certain of its Confidential Information confidential by state or federal laws. The unauthorized use or disclosure of the Confidential Information by Contractor could result in irreparable damage and loss to MPI; and

As part of Contractor's work for, or as a vendor to, MPI, Contractor may be permitted to access or receive information contained in one or more of MPI's computer systems, requiring Contractor to be issued an MPI computer identification and access password, along with other information pertaining to MPI computer access techniques, such as dial-in telephone numbers and procedures.

### *AGREEMENT*

MPI and Contractor agree as follows:

1. To prevent unauthorized access to MPI's computer-based information, Contractor hereby agrees to comply with the following Password Security Policy while using MPI computer systems in performance hereunder:

*NO USER SHALL EVER REVEAL HIS OR HER PASSWORD TO ANY PERSON, EVEN IF THAT PERSON IS AN EMPLOYEE OF MPI. OTHER ACCESS INFORMATION, INCLUDING BUT NOT LIMITED TO DIAL-IN TELEPHONE NUMBERS AND PROCEDURES, FOR MPI COMPUTERS SHALL BE SHARED ONLY WITH EMPLOYEES WHO HAVE A GENUINE NEED TO KNOW. VIOLATION OF THIS POLICY BY ANY NON-MPI EMPLOYEE MAY BE CAUSE FOR TERMINATION OF THE CONTRACT SERVICES AGREEMENT AND/OR MAY SUBJECT SUCH INDIVIDUAL OR THE COMPANY HE OR SHE REPRESENTS, OR BOTH, TO LEGAL ACTION.*

2. Contractor shall keep and hold in confidence all Confidential Information, including without limitation, all records and documents of which he or she may have knowledge as a result of any services

11

performed pursuant to the Contract Services Agreement to which this Agreement is an Exhibit, and all data obtained by Contractor from MPI and/or its computer system, and unless required by his or her services for MPI, Contractor will not remove from MPI's premises any record, information or other document or data relating to any business of MPI, or make any unauthorized copy thereof. All Confidential Information is recognized as property of MPI, and is not to be disclosed or used for the benefit of Contractor or a third party or disclosed to any unauthorized person, at any time, without the written consent of MPI. Within ten (10) days of expiration or termination of the Contract Services Agreement to which this is an Exhibit, Contractor will return to MPI all Confidential Information and all notes, memoranda, correspondence and/or reports completed or in process in Contractor's possession and will not retain any copies thereof.

3. Contractor shall make no copies of or alter any software located in or installed on MPI's computer system, unless Contractor is a vendor of the particular software being copied or altered and is maintaining, enhancing, or upgrading such software at MPI's request. In no event will Contractor program any software purchased by MPI in such a way that Contractor can affect or stop the operation of such software, regardless of reason.

4. If Contractor is required to access information contained in MPI's computer system, MPI will issue to Contractor a computer identification and access password, and information on the appropriate techniques to gain access to MPI's computer system.

5. This Agreement shall inure to the benefit of MPI, its successors and assigns, and shall remain a continuous obligation of Contractor even after termination of the Contract Services Agreement to which this is an Exhibit. The terms of this Agreement are in addition to and not a modification or a limitation of the parties' Contract Services Agreement. The terms of this Agreement are specifically enforceable.

6. Contractor has read and understands the Password Security Policy, as well as all of the terms and conditions of this Agreement, and agrees to comply with them and to limit its access to MPI's computer system to business usage only.

7. This Agreement may be executed in several counterparts, each of which when so executed will be deemed to be an original and such counterparts together will constitute one and the same instrument.

IN WITNESS WHEREOF, this Agreement has been entered into as of the latest date set forth below.

CONTRACTOR: _____

Holly Brooks
Date: 2/29/11

MERCHANDISING PRODUCTIONS, INC.

By: Chris M. Hiaeshutter
Its: Manager - Training Admin.
Date: 2/3/11

12

# EXHIBIT B

## RESPONSIBILITIES OF CONTRACTORS, CONSULTANTS AND VENDORS PROVIDING SERVICES TO MPI

MPI has established corporate policies that provide for a safe work environment, protect individual rights and well being, protect company property and fulfill legal responsibilities.

As a provider of contract, consulting and/or other vendor services to MPI, Contractor and its employees, agents and subcontractors are expected by MPI to understand and comply with the policies stated below. Questions should be addressed with the appropriate MPI contact person immediately.

### Expectations of Contract Labor Services Personnel

**Agreement Regarding Confidentiality and Intellectual Property** – This is typically Exhibit A to MPI's Contract Services Agreement. Each individual providing services to MPI is expected to read and sign this document and abide by its provisions.

**Alcoholic Beverages, Narcotics and Illegal Drugs** – MPI is committed to maintaining a drug- and alcohol-free work environment. Accordingly, alcohol, narcotics, controlled substances and illegal drugs are not permitted on MPI's premises or in MPI vehicles. Similarly, individuals are not permitted to be at work or working for MPI when under the influence of alcohol or other controlled substances. Exceptions are made for properly prescribed drugs, when used by a patient in accordance with the instructions of such patient's physician.

**MPI Fitness Center and Employee Store** – Although MPI operates a fitness center and employee store on the Ada complex, these facilities are private and are for the benefit of MPI employees and IBOs only. Contractors and their employees, agents and subcontractors are not eligible to use these facilities and are asked to refrain from requesting MPI employees to access the facilities or to purchase items from the store.

**Non-Solicitation** – Contractors and their employees, agents and subcontractors may NOT solicit new or additional work on MPI premises without an appointment with appropriate MPI management for a specific purpose. Guests or meetings with other outside vendors or agencies must have a defined MPI business purpose and should be conducted off-site on Contractor's own time.

**Sexual Harassment** – Unwanted, sexually oriented communications or conduct that creates an intimidating, hostile or offensive work environment – as viewed by the individual to whom such communications or conduct is directed – are not permitted or tolerated by MPI on its premises or through use of its facilities or property.

**Smoking** – MPI and its family of companies, including Amway Corp. and Access Business Group LLC, maintain tobacco-free work facilities and environments. This policy prohibits the use of any tobacco-related products on all U.S.-based MPI owned or leased properties, including buildings, parking lots, company-owned vehicles and all vehicles traveling or parked on company property. Examples of tobacco-related products include, but are not limited to, cigarettes, cigars, pipe, and chewing tobacco. Products specifically used to aid in quitting smoking are excluded.

**Weapons/Firearms** – Possession of a firearm or any other weapon on MPI premises or in MPI vehicles is strictly prohibited.

**Workplace Violence**–Acts of violence or threats of violence are not permitted on MPI premises or in MPI vehicles.

Failure to comply with MPI's policies listed herein can result in termination of the Contract Services Agreement between MPI and Contractor, as well as any legal action against Contractor and/or its relevant employee, agent or subcontractor, as applicable.

**MERCHANDISING PRODUCTIONS, INC.**

By: _[signature]_

Name: Chris M. Hiaeshutter

Title: Manager – Training Admin.

Date: 2/3/11

**CONTRACTOR:** _[signature]_

Holly Brooks

Date: 3/29/11